(No. 13565.—Reversed and remanded.)

THE PEOPLE *ex rel.* Ralph Leighty, Appellant, *vs.* MARION
YOUNG *et al.* Appellees.

*Opinion filed December 22, 1921—Rehearing denied Feb. 8, 1922.*

1. SCHOOLS—*what defects are cured by high school validating
act of 1921.* The act of May 10, 1921, (Laws of 1921, p. 797,)
validating the organization of community high school districts, has
the effect of curing the objections that the county superintendent
had no authority to call the election, that the election was void,
and that women were permitted to vote at the election when they
were not legal voters. (*People* v. *Opie, ante,* p. 11, followed.)

2. SAME—*meaning of word "contiguous," in high school vali-
dating act of 1921.* The word "contiguous," in its broadest sense,
means that which touches or joins at the edge or boundary, but
as used in the act of May 10, 1921, validating the organization of
community high school districts, the term must be construed in the
light of the constitutional provision for a "thorough and efficient
system of free schools," and must be held to mean territory so
compact and so nearly adjacent to the school building that all the
children residing in the district may conveniently travel from their
homes to the school building in the time allotted them for travel
before school opens in the morning.

3. SAME—*districts must be compact in order to provide a thor-
ough and efficient school system.* In order to make a school sys-
tem thorough and efficient within the meaning of the constitutional
provision the territory of the State must be divided into districts
sufficiently compact to enable the children to travel from their re-
spective homes to the school building in a reasonable length of time
and with a reasonable degree of comfort.

4. SAME—*meaning of the word "community."* The word "com-
munity," properly speaking, refers rather to the people who reside
in a given locality in more or less close proximity than to the
territory which includes them, but when applied to high school dis-
tricts the term cannot be given a definition that will apply under
all circumstances.

5. SAME—*purpose of act for community high schools.* The in-
tention of the legislature in authorizing community high schools is
to enable people residing in a community to provide high school
facilities for themselves, so that they may not be compelled to sup-
port a school or to attend school in another community.

6. SAME—*what determines whether territory of a school dis-
trict is sufficiently compact.* Whether territory embraced within a

school district is sufficiently compact to be a part of a thorough and efficient system of free schools must be determined from the character of the territory and the means of travel from points in the district to the school building.

7. SAME—*legislature cannot authorize district in disregard of constitutional provision for efficient school system.* The only limitation on the authority of the legislature to establish school districts and to establish and alter the boundaries of said districts is the constitutional provision for a thorough and efficient system of free schools, and hence the legislature has no authority, either in the first instance or by a validating act, to create a school district which is not sufficiently compact to enable the children to reach the school conveniently.

CARTER, J., specially concurring.
CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and FLACK, FLACK & KERMAN, for appellant.

HARVEY H. ATHERTON, and GLENN RATCLIFF, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review a judgment of the circuit court of Fulton county denying leave to file an information in the nature of *quo warranto* to test the validity of the organization of Community High School District No. 281, comprising territory in the counties of Fulton, Schuyler and McDonough. The high school district comprises territory contained in fourteen common school districts. It includes fifty-eight sections of land, twenty-six of which are located in Fulton county and sixteen in each of the counties of Schuyler and McDonough. The district is ten miles long and ten miles wide, but is very irregular in shape. The village of Vermont is located in Fulton county, about a mile and a half from the point where the

three counties corner. The village is located at a point equidistant from the eastern and western boundaries of the district but is within two miles of the north boundary of the district. The north portion of the district is a compact rectangular block ten miles east and west and four miles north and south, except that two sections on the north edge immediately north of the village are omitted. Lying immediately south of the west six-tenths of this block is another rectangular block six miles east and west and two miles north and south. Extending south from the middle of this block is another block four miles north and south and two miles east and west. Traveling by section lines it is ten miles from the southwest corner of this part of the district to the village of Vermont.

It appears from the petition for leave to file the information that the petition of the requisite number of legal voters in the territory proposed to be organized into a community high school district was filed with the county superintendent of schools of Fulton county, the intention of the petitioners being to comply with the requirements of section 89*a* of the School law. Pursuant to the petition the county superintendent of Fulton county called an election and designated one polling place for the holding of the election. He also designated three persons to act as judges and clerk at the election without specifying which of said persons were to act as judges and which as clerk. The election was held January 24, 1920, and women were permitted to vote at the election. There were 443 votes for establishing the district and 142 votes against it.

The grounds upon which the legality of the organization of the district is challenged are: (1) The county superintendent of schools of Fulton county had no authority to call the election, because less than half of the territory described in the petition was in Fulton county; (2) the election was void because the county superintendent did not specify which of the three men appointed to conduct the

election should act as judges and which should act as clerk; (3) the election was void because women, who were not legal voters, were permitted to vote at the election; and (4) the territory described in the petition and included within the boundaries of the district is not compact.

May 10, 1921, there became effective in this State an act to legalize the organization of certain high school districts. (Laws of 1921, p. 797.) That act declares all contiguous territory wherein a majority of the inhabitants of said territory voting on the proposition have voted, at an election called for the purpose by the county superintendent of schools, in favor of the organization of such territory into a community high school district, and where they have at a subsequent election, similarly called and held, chosen a board of education, to be legally and validly organized and established as a high school district. This act purports to cure all the defects in the organization of the district under consideration. The act clearly disposes of the first three grounds urged against the legality of this district. The legislature had the right to declare this territory to be a school district without the formalities of a petition or an election, and the validating act is broad enough to include within its terms the district in question. What we have said in *People* v. *Opie,* (*ante,* p. 11,) and the cases there cited, fully covers this holding.

There is, however, a new question presented by the application of the act of May 10 to the district in question. Section 89*a* of the School law, under which it was attempted to organize this district, required that the territory to be organized into a community high school district must be "contiguous and compact." The validating act omits the requirement that the territory be compact and provides that all contiguous territory coming within the terms of the act shall be a valid and existing high school district. In its broadest sense "contiguous" means that which touches or joins at the edge or boundary. It might be said, therefore,

that a district 100 miles long and two miles wide would be composed of contiguous territory, but when applied to a school district we cannot hold that the word "contiguous" can be given this broad meaning. The constitution commands the legislature to "provide a thorough and efficient system of free schools whereby all children of this State may receive a good common school education." It cannot be said that a system which places the school house at a point so remote that the children of school age cannot reach it conveniently is either thorough or efficient. In order to make a school system thorough and efficient the territory of the State must be divided into districts sufficiently compact to enable the children to travel from their respective homes to the school building in a reasonable length of time and with a reasonable degree of comfort. It is known to everyone who knows anything about Illinois roads and Illinois weather, that children cannot travel nine or ten miles to school over ordinary country roads in bad winter weather. The term "contiguous," as used in the validating act under consideration, must be construed in the light of the command of the constitution, and must be construed to mean territory so compact and so closely united and so nearly adjacent to the school building that all the children residing in the district may conveniently travel from their homes to the school building in the time allotted them for travel before school opens in the morning. The school under consideration is a high school, and the children to be considered are children between thirteen and nineteen years of age. Territory embraced within a high school district might, therefore, be less compact than territory embraced within a graded school district. We must assume that the school building is to be located in the village of Vermont, and, as we have said, the territory in the southwest corner of this district is ten miles from this village.

Appellees argue that the Chicago, Burlington and Quincy Railroad Company has a line running southwesterly through

the village of Vermont and leaving the district at the southwest corner. They also argue that there is a railroad station at Ray, located in the southwest corner of this district, and that the children can travel by railroad from Ray to Vermont and return. There is nothing in the record, however, to show that there is any train service that would accommodate school children.

In considering this question we must also take into consideration that this district was organized as a community high school district. The term "community," properly speaking, refers rather to the people who reside in a given locality in more or less close proximity than to the territory which includes them, but when applied to a high school district it has a meaning similar to that of "neighborhood." The term "community" or "neighborhood" is not susceptible of exact geographical definition, and different people may differ in their notion of what is a single community or neighborhood. In common parlance the word "community" has a broader significance than the word "neighborhood," and as applied to high school districts the territory having a common community center might well contain several neighborhoods. Where two villages are situated six miles apart and each is equally accessible, the natural division of the two communities of which the respective villages are the centers would be an indefinite line about halfway between the villages. In such a case it could not be held that the village first organizing a community high school district could grab the territory for a distance of five miles toward the other village and force the children residing within a mile of the second village to go five miles to school. While the territory surrounding the first village might be clearly compact and contiguous territory it would not meet the intention of the legislature in authorizing community high schools, for the reason that it was clearly intended that people residing in a community might provide high school facilities for themselves and not

be compelled to support a school or to attend school in another community.  It is impossible, of course, to give a definition of the terms "community," "compact" and "contiguous," when applied to school districts, that will apply under all circumstances.  For instance, a city or village on the bank of an unbridged river might well be the community center of a territory radiating from the city or village several miles on the side of the river where it is located, and yet it would not serve the people immediately on the other side of the river, who might be less than half a mile away. Territory within a circle or a square, of which such a city or village is the center, would be compact and contiguous territory, but it would not be compact and contiguous when applied to a school district, because it would not afford school facilities for children living across the river. Whether territory embraced within a district is sufficiently compact to be a part of a thorough and efficient system of free schools must, therefore, in many instances be determined from the character of the territory and the means of travel from points in the district to the school building.  There is no constitutional limitation on the authority of the legislature to establish school districts and to establish and alter the boundaries of said districts except the mandate of the constitution which requires the legislature to provide a thorough and efficient system of free schools, so that all children of the State may receive a good common school education.  The legislature would, therefore, in view of this mandate, have no authority, in the first instance, to create a school district which was not sufficiently compact to enable the children to reach the school conveniently, and it follows that it has no authority to legalize the organization of a district which it could not have authorized in the first instance.

While the exact question here under consideration has never been before the court, we have repeatedly considered the meaning of the term "contiguous and compact," when

applied to school districts. As we have seen, the single word "contiguous," when used in connection with school districts, must be held to mean the same as the term "contiguous and compact," and therefore the decisions construing these terms are in point. The question was first considered in *People* v. *Crossley,* 261 Ill. 78, and the conclusion there reached was followed in *People* v. *Swift,* 270 Ill. 532, and *People* v. *Herrin,* 284 id. 368. We have lately considered the question at some length in *People* v. *Moyer,* 298 Ill. 143, where we held that school districts must be sufficiently compact to provide school accommodations for the children residing therein, and that the school house must be so located in the district that it can be conveniently reached by the children from all parts of the district.

The petition filed herein alleges that the strip of territory four miles in length and two miles in width, extending south from the main body of the district, renders the district void for want of compactness. A map of the district is attached to the petition, and from this map it appears that a part of the territory is at least ten miles from the village of Vermont, which is the place where we understand the school is to be located. This showing is sufficient to show that there is probable ground for testing the legality of the organization of this district, and for that reason the circuit court erred in refusing to give leave to file the information. Whether the territory embraced within this district is sufficiently compact to afford all children of high school age residing within the boundaries of the district reasonable opportunity to get a good high school education can only be shown by proper pleading and proof.

Much of the confusion with respect to the organization of high school districts has arisen by reason of the many overlapping and interlocking provisions of the School law with respect to high schools. Since the revision of 1909 the legislature has enacted seven separate and distinct laws authorizing as many varieties of high school districts. These

districts were different in purpose and scope from the common school district, but instead of making the acts complete and specifying in detail the powers and duties of the board of education of such districts, the several acts have adopted wholesale the powers and duties provided for school directors. Two of these acts have been held unconstitutional, but we still have in full force and effect several acts covering a subject that might be easily and much more intelligently covered by a single act. This confusion has been greatly augmented by the careless or willful omission of many of those who have initiated the move to establish such districts to follow the plain requirements of the law. The legislature began correcting such mistakes by the validating act of 1915. In 1917 two validating acts were passed to cure defects in the organization of high school districts, and in 1919 another. In 1921 it took six validating acts to take care of the irregularities in organizing high school districts that had been discovered up to the time the legislature adjourned. The courts can only construe the constitution and the law as they find it, and if irregularities have occurred in the organization of school districts which cause inconveniences and hardships, those responsible for the irregularities must bear the burden of them. The spirit and letter of the law cannot both be sacrificed to save inconveniences in special situations. The law must be construed and applied for the common good.

The judgment is therefore reversed and the cause remanded to the circuit court of Fulton county for further proceedings. *Reversed and remanded.*

Mr. JUSTICE CARTER, specially concurring: I concur in the conclusion reached in this case but am not in accord with that part of the opinion that quotes with approval the decision of the court in *People* v. *Opie*, (*ante*, p. 11.)

CARTWRIGHT and DUNN, JJ., dissenting.