(No. 14919.—Judgment affirmed.)

THE PEOPLE ex rel. John H. Lewman, State's Attorney,
Appellant, vs. W. I. BAIRD et al. Appellees.

*Opinion filed April 18, 1923.*

1. SCHOOLS—*curative act of May 10, 1921, is valid.* The act of
May 10, 1921, validating the organization of certain community
high school districts, is not unconstitutional. (*People* v. *Opie*, 301
Ill. 11, followed.)

2. SAME—*when community high school district is compact and
contiguous.* A community high school district is composed of com-
pact and contiguous territory where it is rectangular in form, is
five miles wide and eight miles long; and where it is traversed both
east and west and north and south by hard roads, and there is
nothing to show that the students may not with reasonable conven-
ience attend school in the village where the high school building
is located, the district must be held valid.

3. SAME—*community high school district is not required to have
certain community center.* There is nothing in the statute provid-
ing for the organization of a community high school district which
requires that a certain community center shall exist for all of the
territory to be included in the district, and the term "community,"
as used in the statute, is intended to apply only to school purposes
and not to other habits of the people living in a proposed district.

DUNN and DUNCAN, JJ., specially concurring.

APPEAL from the Circuit Court of Vermilion county;
the Hon. JOHN H. MARSHALL, Judge, presiding.

JOHN H. LEWMAN, State's Attorney, and ACTON, AC-
TON & SNYDER, for appellant.

GUNN & PLATT, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The State's attorney of Vermilion county filed in the
circuit court of that county, upon leave of court being had,
an information in the nature of *quo warranto* against the
appellees, as officers of Fairmount Community High School
District No. 234. The information consists of two counts.

The first calls upon the officers to say by what authority they claim to exercise the office of members of the board of education of Fairmount Community High School District No. 234, and the second alleges that the school district is not a legal district. Respondents filed four pleas, and petitioner demurred to the third and fourth pleas, which demurrer was sustained. Respondents filed an amended fourth plea and abandoned their third plea. The petitioner thereupon filed two replications, and a demurrer was sustained to the second replication. The pleas of the respondents set forth the steps in the organization of the school district and the election of a board of education, and allege that the district is compact and contiguous. The pleas also contain allegations bringing the district within the validating act approved May 10, 1921. (Laws of 1921, p. 797.) The first replication denied that the territory is compact and contiguous and averred that it comprises three distinct and separate communities. The second replication, to which the demurrer was sustained, alleged that the district is not valid, for the reason that the election was not conducted as required by law, that women were illegally allowed to vote, and that the curative act of May 10, 1921, is unconstitutional.

The objections to the organization of the district and the election held therein have been considered by this court and disposed of contrary to the contention of appellant in *People* v. *Opie,* 301 Ill. 11, where the constitutionality of the validating act of May 10, 1921, was sustained.

The district in this case is rectangular in form, five miles east and west and eight miles north and south. Fairmount lies two and a half miles from the north boundary of the district, five miles from the south boundary, one mile from the east boundary and three and a half miles from the west boundary. The Wabash railroad crosses the district east and west through Fairmount. The only other village in the district is Jamaica, which is on the east boundary of the district, one and a half miles from the south boundary,

and has about 200 inhabitants. The district is traversed both east and west and north and south by rock, brick or concrete hard roads and is compact and contiguous. *People* v. *Brown,* 306 Ill. 245; *People* v. *Patterson,* 305 id. 541.

The principal argument of appellant is that by reason of a stream called Salt Fork river, which extends through the northwest corner of the district, leaving approximately four sections of land on the northwest side of it, and because of the existence of the village of Jamaica in the southeast corner of the district, the territory lying north of Salt Fork river and that surrounding the village of Jamaica is not a part of the community of Fairmount and therefore can not properly be included in a community high school. Evidence offered in the record on the hearing touches largely this objection, and consists of statements of witnesses that the greater part of the people living northwest of Salt Fork river do most of their trading and churchgoing in the village of Fithian, lying north, while those in the territory surrounding the village of Jamaica do most of their trading and churchgoing either in Jamaica, or in Sidell, southwest of Jamaica and outside of the district. This district is bounded almost entirely by the boundary lines of other school districts. The Fithian school district bounds it on the north and has been organized for several years. The lands of this district lying north of Salt Fork river and adjacent to the Fithian district were not included therein at the time that district was organized. While the district in question was organized after those surrounding it, no attempt had ever been made, so far as the record shows, to include in the other districts any of the territory of this district. There is nothing in the statute providing for the organization of a community high school district which requires that a certain community center shall exist for all of the territory to be included in the district. So far as the term "community" is concerned, it is intended to apply only to school purposes and not to other habits of the peo-

ple living in a proposed district. (*People* v. *Drennan, ante,*
p. 482.) With the exception of a short distance on either
side of the Salt Fork river the land included in this district
is level. The roads are good. Bridges cross this river con-
necting the sections of land in the northwest corner of the
district referred to, with roads leading to Fairmount. There
is nothing to show that the students may not with reason-
able convenience attend high school in Fairmount. The dis-
trict is a valid district and the circuit court was right in
so holding.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

DUNN and DUNCAN, JJ., specially concurring:

We concur in the judgment of affirmance but not in the
opinion, and in view of the large number of cases involving
the organization of community high school districts and the
great importance of the litigation, we deem it advisable to
state at length our views on the questions involved in this
and other cases constantly arising in such litigation and the
reasons on which those views are based.

The objections urged against the validity of these dis-
tricts in the various cases which have come before the court
are, that the territory of the districts is not compact and
contiguous, that such territory comprises several separate
and distinct community centers, and that the election upon
the proposition to organize the school districts was not con-
ducted according to law. The act of May 10, 1921, cited
in the opinion of the court and which was held valid in
*People* v. *Opie,* 301 Ill. 11, purported to legalize the organi-
zation of high school districts in all cases where a majority
of the inhabitants of any contiguous territory voting on
the proposition have voted, at an election called for the pur-
pose by the county superintendent of schools, in favor of
the organization of such territory into a community high
school district, and at a subsequent election similarly called

and held a board of education has been chosen for such district. It will be observed that this statute contains no requirement that the territory of the district shall be compact but requires only that it be contiguous. It contains no requirement that the district shall be formed about a community center, and neither does section 89a of the School law, as amended in 1919, under which the district in question was organized. The opinion in this case concedes this, although in other cases it has been held that the territory of community high school districts must be limited to a community of people with common interests and associations and a community center. In the opinion in this case the question whether the territory of the district is compact and contiguous, and in other cases the question whether the district was organized about a community center, are considered as if those questions were material to the decision of the case, while in our judgment they are wholly immaterial. The whole matter of the organization of school districts is a legislative and not a judicial question, and the courts have no jurisdiction to inquire into such organization except to determine whether it is in conformity with the statute.

There is no constitutional requirement that a school district shall be compact or contiguous. That requirement is wholly statutory, and first appears in school legislation in this State in section 6 of the act of 1911 to authorize the organization of high school districts. (Laws of 1911, p. 505.) This act, but not this requirement, was held unconstitutional in *People* v. *Weis,* 275 Ill. 581. This requirement was also included in the amendment to section 89 of the School law adopted in 1917, which authorized the establishment of community high schools. (Laws of 1917, p. 738.) This act was also held unconstitutional at the February term, 1919. (*Kenyon* v. *Moore,* 287 Ill. 233.) Thereupon the act of June 28, 1919, was passed, which amended the School law by the addition of section 89a,

which provided for the organization of community high school districts, omitting the provisions which caused the act of 1917 to be held unconstitutional. (Laws of 1919, p. 908.) This act also contained the requirement that the territory should be compact and contiguous. At the same session the General Assembly amended the School law by the addition to the revised act of 1909 of seven sections, which authorized the organization of community consolidated school districts. This amendment required the territory to be organized into a community consolidated school district to be compact and contiguous. (Laws of 1919, p. 904.) Informations in the nature of *quo warranto* were filed in a number of cases questioning the validity of the organization of various districts which had been organized under these acts, not only because the acts were unconstitutional, but because the territory involved in the several cases was not compact and because the requirements of the act in regard to the petition and other formalities had not been complied with. We held the Community Consolidated School District act constitutional in *People* v. *Moyer,* 298 Ill. 143, and also held that it was the province of the court to determine whether the requirement as to compactness had been complied with. The opinion in that case was filed on December 21, 1920. The General Assembly met the next month, and on May 4, 1921, passed a curative act declaring legal and valid the organization of community consolidated school districts whose organization had theretofore been attempted without a compliance with the requirements of the statute for that purpose. (Laws of 1921, p. 796.) On May 10, 1921, another curative act was passed, which declared legal and valid the organization of community high school districts whose organization had theretofore been attempted without a compliance with the requirements of the statute for that purpose. (Laws of 1921, p. 797.) We held this act constitutional in *People* v. *Opie, supra,* and the act of May 4, 1921, constitu-

tional in *People* v. *Graham*, 301 Ill. 446. Both of these acts omitted entirely the requirement that the territory should be compact and required only that it should be contiguous. At a previous session in 1919 the General Assembly had passed an act for the purpose of declaring legal the organization of certain high school districts attempted under the amendment of 1917 in which formalities required by that amendment had been omitted, (Laws of 1919, p. 907,) but the *Moyer case* had not then been decided, and the requirement that the territory should be compact and contiguous was retained in the curative act.

This history of the legislation on this particular question in the last three sessions of the General Assembly, in connection with the decision in the *Moyer case*, makes it perfectly apparent that by the omission of the word "compact" from the curative acts of May 4, 1921, and of May 10, 1921, the General Assembly, having the decision of the *Moyer case* in mind, intended to abolish the statutory requirement that the territory of community high school districts and the territory of community consolidated school districts should be compact and contiguous, which had been enforced in the *Moyer case*, so far as it affected districts which had already attempted to organize under either of those acts and to declare that it should be sufficient if such territory were contiguous. The district in this case having been organized on November 11, 1920, after the passage of the act of 1919 and before the act of May 10, 1921, is therefore governed by the latter act, and the question of compactness of its territory is immaterial.

In *People* v. *Young*, 301 Ill. 67, the manifestly intentional omission of the word "compact" from the curative act for the express purpose of dropping the quality of compactness from the requirements for the territory of a community high school district was ignored, and it was said that the word "contiguous" must be construed, in the light of the command of the constitution, to mean territory so

compact and so closely united and so nearly adjacent to the school building that all the children residing in the district may conveniently travel from their homes to the school building in the time allotted them for travel before school opens in the morning. Whether the command of the constitution justified this construction will be discussed hereafter. Of itself, in connection only with the context in the act, the word "contiguous" could have no such meaning, and in giving it such construction the clear intention of the General Assembly was merely ignored and this word alone in the act was given the same meaning as the phrase "compact and contiguous" in the original act. Clearly it was the intention of the General Assembly in the curative act to make it apply to cases where the territory was contiguous though not compact. If in doing so it ran counter to the constitution, the duty of the court is not to hold that the act means something directly contrary to what it says and was intended to say, but to enforce the constitution and hold the act invalid. This district was compact if that condition had been required.

The first Community High School act (that of 1917) required that a community high school district should be formed, as far as practicable, about a community center, and have sufficient territory, assessed valuation and prospective high school pupils to form a satisfactory and efficient high school, and provided that it should be the duty of the county superintendent of schools, before calling an election, to consider the form, size and assessed valuation of the proposed high school district and the number of prospective high school pupils in the same, and if in his judgment the proposed district did not meet the requirements specified, he might refer the petition back to the petitioners with recommendations as to changes before calling the election or he might deny the prayer of the petition. Because of these requirements the act was held unconstitutional in *Kenyon* v. *Moore, supra.* That case was

decided at the February term, 1919, and a rehearing was denied on April 2. The General Assembly which was then in session passed another community high school act omitting all these requirements, which was approved on June 28 and is the act under which the district here involved was organized. There is now, therefore, no provision of law requiring a community high school district to be formed about a community center and to have sufficient territory, assessed valuation and prospective high school pupils to form a satisfactory and efficient high school. The legislative intention is apparent from its action in omitting these provisions, and no inference arises from the use of the word "community" in the style of the high school district that it was intended that these provisions, though omitted, should still be a part of the act, as they had been of the act of the previous session. Having omitted them it is hardly to be presumed that the General Assembly intended that the act should be regarded as meaning the same thing as before.

In *People* v. *Young, supra*, the omission of these provisions by the General Assembly was treated as of no effect and the same construction as to the conditions for the organization of a community high school district was given to the use of the mere epithet "community" in the name to be given to the kind of district organized under the act as to the detailed statement of requirements in the original act. The idea included in the use of the word "community" was that the high school was for the common benefit of everybody in the community and the community was that of the whole district. "Community" and "common" and "public" are loose words of wide meaning, which may apply, according to their context or the manner of their use, to every subdivision of governmental or social activity, organized or unorganized, from the school district or neighborhood to the State or nation. The word "common" has been frequently used as synonymous with "free" in con-

nection with the public schools, not only in ordinary usage but in our statutes. The community high school district is merely a common high school district in the same sense as a common district school. Each is a free school open to all,—that is, it is a part of our free system of common schools, open to all on equal terms.

It has been argued that the command of the constitution directing that the General Assembly shall provide a thorough and efficient system of free schools, whereby all the children of this State may receive a good common school education, is also a limitation on the power of the General Assembly which prohibits it from creating a school district not sufficiently compact to enable the children to reach the school conveniently. This requirement of the constitution has been said to be both a mandate to the legislature and a limitation on its power. It is not a grant of power in any sense. The legislature has inherent power, as the representative of all the people of the State, exercising all the legislative power of their sovereignty, to do everything commanded by section 1 of article 8 of the constitution without any grant from the constitution. It gets no greater power from the command. When we look for the limitations on that power we find these two, and these two only, which the courts can enforce: that the schools shall be free and that they shall be open to all equally. The court has enforced these limitations when the occasion requiring the enforcement of them arose. (*People* v. *Board of Education,* 101 Ill. 308; *People* v. *Mayor of Alton,* 193 id. 309; *People* v. *Moore,* 240 id. 408.) There are no others to which the judicial power extends.

The command of the constitution, together with any limitation arising from it in regard to the character of the education to be afforded and the system of free schools to be provided, is addressed to the General Assembly alone. It was not a self-executing provision but required legislation to give it effect, and the responsibility and duty of

providing the system and the means and agencies by which it should be made effective rest upon the General Assembly alone. It is no more within the authority of the court to pass judgment upon the thoroughness and efficiency of the system, or any part of it, than to determine whether the laws enacted for the protection of operative miners, in compliance with section 29 of article 4 of the constitution, are such as are necessary for that purpose; whether the action of the Governor in removing an officer for incompetency, neglect of duty or malfeasance in office, under section 12 of article 5, is justified by the facts; whether where a special law has been enacted a general law could not be made applicable, in compliance with section 22 of article 4; whether the legislature has complied with section 6 of article 4 in passing a legislative apportionment act. Yet all these questions have been held to be matters for legislative determination with which the courts have no right to interfere. (*Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270; *Wilcox* v. *People,* 90 id. 186; *Owners of Lands* v. *People,* 113 id. 296; *People* v. *Thompson,* 155 id. 451.) In fact, the General Assembly many years before the adoption of the constitution of 1870 had provided a thorough and efficient system of free schools, and the laws enacted for that purpose were continued in force after the adoption of the constitution the same as before. Fundamentally the common school system now in force is substantially the same as that prescribed by the Revised Statutes of 1845. There was a revision of the School law in 1857 which has been the foundation of all subsequent legislation in regard to schools. The congressional township has always been the unit of the school system, in which trustees have been elected and school districts have been organized in accordance with the wishes or convenience of a majority of the inhabitants of the township. The wishes and convenience of the majority of the inhabitants of the territory affected have always been the con-

307—33

trolling element in determining the organization of school districts, and such wishes have been indicated from time to time either by petitions signed by a majority or more of the legal voters or by elections held for that purpose. At the time of the adoption of the constitution of 1870 the whole State had been divided into school districts, and since the adoption of the constitution no requirement whatever has existed as to the shape, size, value or character of the territory composing the school district, or the number of its inhabitants or prospective pupils, until the adoption of the acts of 1911, 1917 and 1919, which have been referred to. These matters were all left to be determined, in the first instance, by the inhabitants voting or petitioning for the creation or alteration of the district and by the discretion of the trustees of schools in acting upon the request of the inhabitants. Controversies have arisen and have been litigated involving the formation, organization and alteration of school districts and many cases have been brought to the Supreme Court, but in no case, until in very recent years, has it been claimed that it was within the jurisdiction of the judicial department of the State to decide what size, form or character of districts was best adapted to the wishes or convenience of the inhabitants of the territory affected or to the securing of a good common school education to all the children of the State. That has always been regarded as a legislative question. The amendment of section 89 in 1917 providing for community high school districts required that they should be formed, as far as practicable, about a community center, and have sufficient territory, assessed valuation and prospective high school pupils to form a satisfactory and efficient high school, and that it should be the duty of the county superintendent of schools, before calling the election, to consider the form, size and assessed valuation of the proposed high school district and the number of prospective high school pupils in the same, and if in his judgment the proposed district did

not meet the requirements, he might refer the petition back
to the petitioners, with recommendations as to changes, be-
fore calling the election, or he might deny the prayer of
the petition.   Because these provisions were regarded as
delegating to the county superintendent legislative powers
this amendment was held to be unconstitutional in *Kenyon*
v. *Moore, supra.*   A similar discretion conferred by the
same act, in the amendment of section 90, on the Super-
intendent of Public Instruction, on appeal, to change the
boundaries of all abnormal high school districts with a view
of making each high school district consist of compact and
contiguous territory, easy of access for the pupils of the
district, and to the end that justice shall be done, was re-
garded as subject to the same objection and was held un-
constitutional in *Jackson* v. *Blair,* 298 Ill. 605.

In *Kenyon* v. *Moore, supra,* in holding section 89 as
amended to be in violation of article 3 of the constitution
because it delegates legislative powers to the county super-
intendent of schools, we said:   "That section is silent as
to the area, assessed valuation and number of prospective
high school pupils, as well as the form and size of the pro-
posed district requisite to the formation of a satisfactory
and efficient high school district.   Those questions are dele-
gated to the several county superintendents, with direction
to them, before calling an election, to consider the form,
size and assessed valuation of the proposed district and
the number of prospective high school pupils, 'and if in
his judgment the proposed district does not meet the re-
quirements heretofore specified,' he may refer the petition
back to the petitioners with recommendations or may deny
the prayer of it altogether.   The requisites of a district are
not theretofore specified that will make a satisfactory and
efficient high school.   This statute was not complete when
it left the legislature.   It attempted to confer on county
superintendents a discretion as to what the law should be.
That cannot be done.   (*Sheldon* v. *Hoyne,* 261 Ill. 222.)

The law as to what will constitute a satisfactory and efficient high school district is not found in the statute itself. It does not define or specify the requisite of a satisfactory and efficient community high school district, but leaves that matter to the discretion of the county superintendent without any rules of limitation for the exercise of such discretion. Until that official acts it cannot be known what the law is. Instead of being a uniform law, applicable alike to all similar areas of territory throughout the State, it is subject to the varying opinions of the county superintendents in the several counties of the State and of the same county superintendent or his successor in different parts of the same county. It is an arbitrary discretion and renders the section invalid because it delegates legislative powers to the county superintendent and of the opportunity it affords for unjust discrimination." (Citing authorities.)

If the authority to define or specify the requisites of a satisfactory and efficient high school district, without any rules of limitation for the exercise of such authority, is a legislative power which cannot be delegated to a county superintendent, then it is not a judicial power but is a legislative power, which this court has not the right to exercise in its arbitrary discretion.

The constitution commands the legislature to provide for a thorough and efficient system of free schools whereby all the children of the State may receive a good common school education, but does not declare of what such system shall consist or provide the means or the manner in which it shall be established or conducted. Those things are committed entirely to the legislative judgment. They are within the legislative power and not within the judicial power. As was said of another mandate of the constitution which required the General Assembly to pass laws for the inspection of grain, for the protection of producers, shippers and receivers of grain and produce: "No system is prescribed, and the General Assembly is therefore left to

the exercise of its discretion in the enactment of statutes in compliance with this mandate." (*People* v. *Harper,* 91 Ill. 357.) The only restriction upon the exercise of this power must be found in some positive limitation imposed by the constitution. Where the constitution has declared that the legislature shall not do a certain thing the court has power to enforce that limitation, and it cannot escape the duty of declaring a law passed in violation of the prohibition void. Where the constitution has declared that the legislature may do a certain thing in a certain way or under certain conditions, this is a limitation against the exercise of that power except in the manner indicated or under the prescribed conditions, and the court may enforce this denial of power. When the constitution declares that the legislature shall do a certain thing without prescribing the manner in which it shall be done or the means which shall be employed, the legislature may exercise its own judgment as to the manner in which the purpose which it is directed to accomplish shall be carried out and the means and methods which it will employ for that purpose. The judiciary has no jurisdiction to say that the legislature shall perform the act in accordance with the judgment of the court and not in accordance with the judgment of the legislature. The judicial department is not given general supervision over legislation, but has only the power of interpreting legislation and of determining whether the legislature has disregarded any prohibition placed upon it by the constitution. An act of the legislature in obedience to a mandate of the constitution which commands the General Assembly to legislate upon a particular subject but imposes no restrictions as to the particular character of the legislation is not subject to review by the court unless it clearly violates some prohibition of the constitution. "Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes and not those implied restrictions which, resting in theory

only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives." (Cooley's Const. Lim.—2d ed.—129.) Such a constitutional command to the legislature is as obligatory on it as any other provision of that instrument but it is one which cannot be enforced by the courts. It addresses itself to the legislature alone, and it is not within the judicial function to say whether the legislature has obeyed the behest in its true spirit. *Gillinwater* v. *Mississippi and Atlantic Railroad Co.* 13 Ill. 1.

Article 14 of the constitution of 1848 required the General Assembly, at its first session, to pass such laws as would effectually prohibit free persons of color from emigrating to or settling in this State and to prevent the owners of slaves from bringing them into the State for the purpose of setting them free. In passing upon the constitutionality of legislation adopted in ·compliance with this requirement the court said in *Nelson* v. *People,* 33 Ill. 390: "The constitution having failed to specify the mode by which such persons shall be effectually prevented from emigrating to or settling within this State it of necessity devolves upon the General Assembly to choose such means as will attain the end, and in doing so they must be held to be the sole judges as to the proper means to be employed. They have the discretion, subject to the control of neither of the other departments of government. The only limitation of their power is the constitutions of the general and State governments. If not restricted by either of those instruments their power has no limitation."

In considering the constitutionality of an act making an apportionment of the State into senatorial districts, which the constitution required to be composed of contiguous and compact territory, containing, as nearly as practicable, an equal number of inhabitants, the court said: "The really difficult question in the case is to determine the bounds fixed by the constitution to the discretion of the General As-

sembly, when that body, acting within other and more definitely expressed limitations, is complying with the constitutional mandate to form senatorial districts of compact territory, containing, as nearly as practicable, an equal number of inhabitants. If the statute is within those bounds, though resulting in inequality and injustice, it is valid, for the courts have no power to revise or annul an act of the legislature which is the mere exercise of its discretionary power or which rests in the legislative judgment." (Citing authorities.) *People* v. *Thompson*, 155 Ill. 451.

"The court cannot declare a statute unconstitutional and void on the ground of unjust differences not prohibited by the constitution and within the legislative discretion, and neither can the court sustain a law where there is a want of power to enact it, merely because it is wise in policy or just in its provisions." *People* v. *Hutchinson*, 172 Ill. 486.

"The General Assembly is without restriction or limit in the exercise of legislative power except as bounds are set or restrictions imposed by the constitution. [Citing authorities.] * * * Neither the motive nor the wisdom of the General Assembly is ever questioned." *Sutter* v. *People's Gas Light Co.* 284 Ill. 634. See *Greenfield* v. *Russel*, 292 Ill. 392; *Peabody* v. *Russel*, 301 id. 439.

"The court has never attempted to exercise any compulsory power over the legislative department. The constitution enjoins upon that department the duty to enact certain laws, such as liberal homestead and exemption laws, laws necessary for the protection of operative miners, and laws to give full effect to article 13, relating to warehouses; and the court has not only never attempted to determine whether the laws enacted for those purposes were such as were necessary or proper, but if the legislature had neglected or refused to pass any such laws no one would think for a moment of asking the court to enforce the performance of the duties so specifically enjoined upon the legislature. * * * The constitution prohibits the legislature

not only from passing local or special laws in certain enumerated cases but also in all other cases where a general law can be made applicable, and it has been uniformly held that the question whether a general law can be made applicable in cases other than those enumerated is for the legislature, alone.—*Knopf* v. *People,* 185 Ill. 20; *City of Mt. Vernon* v. *Evens Brick Co.* 204 id. 32; *Block* v. *City of Chicago,* 239 id. 251." *People* v. *Dunne,* 258 Ill. 441.

This court has never announced any definition of a common school education and it cannot announce one, for it has held that the question is one for legislative determination. (*Richards* v. *Raymond,* 92 Ill. 612; *Powell* v. *Board of Education,* 97 id. 375.) A high school for the education of the more advanced pupils is as much a part of our system of free schools as the district or grade schools. (*Russell* v. *High School Board,* 212 Ill. 327; *People* v. *Moore,* 240 id. 408; *Cook* v. *Board of Directors,* 266 id. 164; *People* v. *Chicago and Northwestern Railway Co.* 286 id. 384.) How the maintenance of such high schools is to be provided for is a matter which rests in the sound discretion of the legislature, "subject to the requirements of the constitution regarding uniformity and against discrimination. Under the mandate of the constitution the legislature has power to form school districts whenever in its discretion such should be done, subject only to the limitation of the constitution as to the purpose of such districts, and the further limitation that the plan thereof be uniform and apply uniformly to all citizens of the State similarly situated." *People* v. *Chicago and Northwestern Railway Co. supra.*

The General Assembly provided that community high school districts might be formed out of any compact and contiguous territory, and the curative act removed the requirement of compactness so far as this case is concerned. Under that act the only conditions of organization were contiguous territory, an election called by the county superintendent of schools, a majority affirmative vote, and a sub-

sequent election, similarly called and held, of a board of education. These conditions are all present in this case. The legislature having exercised its discretion under the constitution and prescribed the conditions for the organization of districts, those conditions must be uniform throughout the State. How can they be uniform if each district, after having organized in complete conformity to the conditions prescribed by law, remains subject to a judicial investigation as to whether it constitutes a satisfactory and efficient high school district, whether it will reasonably serve the purpose for which it was designed? This is the precise question which we held in *Kenyon* v. *Moore, supra,* was a legislative question which could not be delegated to the county superintendent of schools. How, then, can the judiciary assume to decide that question? If it is legislative the courts are excluded by the constitution from deciding it. The General Assembly either has the power to prescribe these conditions or it has not. If the conditions are such that the General Assembly may authorize the organization of a district upon compliance with them that ends the case, for there is no question but that the conditions were complied with. If the General Assembly was without power to authorize territory to be organized into a district upon compliance with these conditions, only, then, of course, section 89*a* must be held unconstitutional, as section 89 was in *Kenyon* v. *Moore, supra.* The discretion of the General Assembly in the formation of school districts has been recognized in too many cases, a number of which are cited in *People* v. *Chicago and Northwestern Railway Co. supra,* for us to adopt the latter view.

Counsel for the appellees have relied with much confidence on *People* v. *Young, supra,* and *People* v. *Kirkham,* 301 Ill. 45. We are of the opinion that the construction given to the curative act in those cases and the views expressed as to the effect of article 1 of section 8 of the constitution are not in accordance with the law.

The questions as to what system of free schools shall be adopted and whether any system which may be adopted is adapted to enable all the children of the State to receive a good common school education, or whether it is proper and reasonably practicable to modify the system so as to add to the convenience with which such education may be received, and whether any modifications will or will not add to such convenience, are all legislative and not judicial questions. What is a thorough and efficient system of free schools is a legislative question, which the legislature has the final power to determine, and is not a judicial question. There is no warrant in the constitution for the exercise by the courts of general supervisory power over legislation by the General Assembly which it is commanded to enact for a particular purpose, without specification or limitation as to the manner or means in or by which such purpose is to be accomplished. Such power is contrary to the separation declared by the constitution of the legislative, executive and judicial powers. The views of the persons vested with judicial power as to the wisdom, justice, propriety, reasonableness or sufficiency of legislative action, which is not prohibited by any of those limitations which the constitution imposes, cannot be considered in determining the question of legislative power. Opinions of men may differ as to the degree of thoroughness and efficiency of the system of free schools provided by the School law and the extent to which all children of the State may receive a good common school education. They may differ as to the effect on these matters of particular provisions. Possibly there may be those who think that the system provided by the legislature has no real tendency to thoroughness and efficiency and no tendency to provide a means whereby all children of the State may receive a good common school education and that the amendments in question only make bad legislation worse. We have no authority to consider such difference of opinion.

The problems which arise in connection with the schools of the State are practical and it is not always easy to see what is best. The wisdom of any action taken may be questionable. Even if the legislative judgment might be thought crude or unwise and the law unjust or oppressive, errors of legislation are not subject to judicial review unless they exceed some limitation imposed by the constitution. Within those limitations the legislative power is supreme and judicial power cannot interfere with its acts. The School law expresses the judgment of the legislature, whose action on the subject we have no power to review. The courts are not the sole constituted guardians of the public welfare and are not authorized to approve or disapprove the acts of the legislature according to the courts' judgment of their propriety or efficiency. "It must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." *Missouri, Kansas and Texas Railway Co.* v. *May*, 194 U. S. 267.

The formal regularity of the proceedings for the organization of the district was not questioned and the plea setting them up was a complete justification. In our judgment the issues made by the replications as to whether the territory of the district was compact and as to whether there were several communities and community centers in the district were immaterial. The discussion of those issues is of no importance and has no proper place in the opinion of the court, for they present no judicial question for determination. The replications constituted no answer to the plea, and the trial was of an immaterial issue. The respondents were entitled to judgment on the pleadings.