---

(No. 15134.—Judgment affirmed.)
THE PEOPLE *ex rel.* William M. Gift *et al.* Appellants, *vs.* JAMES U. ROTE *et al.* Appellees.

*Opinion filed April 14, 1924.*

1. SCHOOLS—*when a community high school district is not too large.* A community high school district which is rectangular in shape, eight and one-half miles long and six and one-half miles wide, is sufficiently compact and contiguous considering only its size and shape, independent of other elements.

2. SAME—*the term "community" refers only to school purposes.* The term "community," as used in the School law for the organization of community high school districts, applies only to school purposes and not to other habits of people living in a district.

3. SAME—*a school district cannot be of same convenience to every pupil.* No school district can be so organized that the convenience of attending school will be the same to every pupil.

4. SAME—*occasional bad roads do not necessarily render district invalid.* A community high school district must afford to all of the children within its boundaries an opportunity to enjoy with a reasonable degree of comfort the benefits of the school, but it cannot be said that because a student may occasionally miss school on account of road conditions the district does not therefore comply with the law.

APPEAL from the Circuit Court of Stephenson county; the Hon. F. J. STRANSKY, Judge, presiding.

CHARLES H. GREEN, State's Attorney, DOUGLAS PATTISON, and A. J. CLARITY, (R. T. LUNEY, of counsel,) for appellants.

LOUIS H. BURRELL, and HAROLD D. JAMES, for appellees.

Per CURIAM: The only questions involved in this case are whether or not Orangeville Community High School District No. 303, in Stephenson county, is compact and contiguous and whether it contains parts of more than one community. Those questions were tried before the circuit court without a jury on the issues made up on an information in *quo warranto.* The court found that the district complies with the law and dismissed the information.

This district is in the northern part of Stephenson county and is eight miles east and west by six and one-half miles north and south. The village of Orangeville, where the school is located, is about four and one-half miles west of the east boundary, three and one-half miles east of the west boundary, two and one-half miles south of the north boundary and about four miles north of the south boundary. It is within a mile of the geographical center of the district. Orangeville is the only incorporated village within the district and has a population of about 550. The roads throughout the district, as a rule, follow the section lines. There is a road leading diagonally across this district, entering it at the northwest corner, passing through Orangeville, and from thence south, bearing somewhat east, to about the middle of the south boundary of the district. This road is what is known in the record as a patrol road. Another patrol road enters the district at the west, a little south of midway of the west boundary, leads northeasterly, north and east into Orangeville, on through Orangeville, and thence east. A small stream known as Richland creek enters the district at about midway of the northern boundary, flows south through Orangeville and then bears southeast, leaving the district at about a mile from its southwest corner. There are no hard roads in the district.

In the southwest corner of the district is a station called Buena Vista. A branch of the Illinois Central railroad ex-

tends through this station and through Orangeville. Trains leave Buena Vista for Orangeville at eight in the morning and return at five in the evening. Railroad fare is shown to be fourteen cents. Buena Vista has a store, a creamery and a railway station. West of the southern half of the district, about a mile beyond its boundaries, is a station called McConnell. This appears to be an unincorporated settlement. Neither of these settlements has ever maintained a high school. A mile east of the southeast part of this district is a neighborhood settlement called Afolkey. A few miles further south, at a point about a mile and a half southeast of the district, is a village called Dakota.

Appellants contend that the district is so abnormally large that pupils of the high school residing in some parts of the district, owing to the condition of the roads, do not have a reasonable opportunity for attending school, and for that reason the district is not compact and contiguous within the meaning of those terms as used in the School law; also that this district contains more than one community center and large parts of territory in which villages without the district are the respective centers. This district is rectangular in form, and so far as its size, independent of other elements, is concerned, is compact and contiguous. *People v. Baird,* 307 Ill. 503; *People v. Brown,* 306 id. 245; *People v. Patterson,* 305 id. 541.

The evidence does not disclose that Orangeville does not meet the requirements of a community center for school purposes. As was said in *People v. Baird, supra,* and *People v. Drennan,* 307 Ill. 482, the term "community" is intended to apply to school purposes and not to other habits of people living in a district. As we have seen, the only other settlement within the boundaries of this district is Buena Vista. Buena Vista does not contain a high school nor does McConnell, which is outside the district. Dakota, a village of a population of about 250, lies a mile and a half southeast of the district. It has a community high

school. While there is a dispute in the evidence as to the number of people in the southeast and southwest corners of this district who go to Orangeville for their social functions, we are of the opinion that the record sufficiently shows that for school purposes the location of the school building in Orangeville complies with the requirements of the law as a community center.

As is usual in this class of cases, there was a sharp conflict in the evidence as to ability to traverse the territory during the winter months and as to the accessibility of this school. On this question the relators introduced the testimony of twenty-six witnesses and respondents introduced forty-nine. Of the latter, nineteen were students in the Orangeville community high school. It would serve no useful purpose to review at length the testimony of the various witnesses. From their testimony it is apparent that the highways of the district are what are known as common dirt roads. For a period of eight months each year, commencing on April 1, the roads known as patrol roads receive constant attention. These roads have been graded and drained and culverts put in. The testimony practically all is that they are greatly improved thereby; that by reason of better drainage they do not become so muddy in the winter time. It appears from the evidence that the roads of this district are similar to those of like territory in Illinois. The greatest distance that any student has to travel is eight and one-half miles. The testimony on the part of the appellants is to the effect that at times during the school year roads are impassable at certain places; that on account of the condition of the roads in bad weather and the distance which some of the pupils must travel they cannot attend school regularly but are required to board in the village of Orangeville or forego the privilege of attending school. The testimony of the appellees includes that of road officials, a physician, a resident of the district who makes a business of clerking farm sales, two drivers of oil trucks, stock buy-

ers, mail carriers, patrolmen of the patrol roads, farmers, and pupils of the school, some attending from the more remote parts of the district. The testimony of appellees' witnesses, generally, is that the patrol roads have been very much improved by working during eight months of the year, and that with the exception of times when the weather conditions are exceptionally bad the roads can be traveled the year round. Appellees' evidence also shows that numerous students who live outside the district attend this school, and did so attend prior to the organization of the district.

We have frequently called attention to the fact that no school district can be so organized that the convenience of attending school will be the same to every pupil. The legislature in authorizing the organization of community high schools in rural districts intended to afford an opportunity for a high school education in such districts. Naturally, in a rural high school district attendance must depend upon the roads of the district, which in the absence of pavement are more or less subject to weather conditions. The rule very frequently repeated in the decisions of this court is, that school districts of this character must afford to all of the children within its boundaries an opportunity to enjoy with a reasonable degree of comfort the benefits of the schools. These decisions have been so frequent that it is not necessary to refer to many of them. In *People* v. *Farran,* 311 Ill. 87, and *People* v. *Price,* 310 id. 66, many of these cases are cited. It cannot be said that because a student may occasionally miss school on account of road conditions a school district does not therefore comply with the law.

We cannot say that the circuit court erred in holding this district to be compact and contiguous within the meaning of the law, and its judgment will therefore be affirmed.

*Judgment affirmed.*