THE PEOPLE *ex rel.* Charles Bartlett *et al.* Appellants, *vs.* JAMES H. VASS *et al.* Appellees.

*Opinion filed February 16, 1927—Rehearing denied April 14, 1927.*

1. SCHOOLS—*school district need not be equally convenient to all school children.* It is not a lawful exercise of the constitutional power where a school district is created which on account of its size or road conditions will not permit children to attend school by traveling from their homes to a school in a reasonable length of time and with a reasonable degree of comfort, but it is impossible to create a district of any size which will afford the same conveniences to all the children attending the school, and it cannot be held that because a student may occasionally miss school on account of road conditions the school district does not, therefore, comply with the law.

2. SAME—*what must be shown to warrant holding that school district is not compact and contiguous.* Every reasonable presumption will be indulged in favor of the validity of a school district established by authority of the legislative department of government, and the courts will not hold a district invalid for lack of compactness and contiguity unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school.

3. SAME—*when high. school district comprises one community.*
A community high school district comprises but one community
for school purposes where the school is located in the largest town
in the district, which has always been regarded as a community
center for school purposes, although the district is adjacent to other
towns outside of the district and many inhabitants of the district
use the latter towns for business, social and religious purposes.

DUNN and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Hancock county; the
Hon. WALTER C. FRANK, Judge, presiding.

HOMER H. WILLIAMS, State's Attorney, and SCHO-
FIELD & BELL, for appellants.

O'HARRA, O'HARRA & O'HARRA, and HARTZELL, CAVA-
NAGH & MARTIN, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

By an amended information filed in the circuit court of
Hancock county the relators (appellants here) challenged
the validity of the organization of Dallas City Community
High School District No. 308, in Hancock and Henderson
counties. To the amended information a plea was filed by
appellees, in which they set up in detail the various steps
taken in the organization of the district and their election
as directors thereof. A formal replication was filed to the
plea. A trial of the issues before the court resulted in a
judgment in favor of appellees, from which an appeal has
been taken to this court.

Several technical questions are raised by appellants as
to the sufficiency of the original petition filed with the
county superintendent of schools of Hancock county. The
statute in force at the time of the organization of the dis-
trict, so far as it pertains to the petition, provided: "Upon
the receipt of a petition signed by fifty or more legal voters
residing in any contiguous and compact territory, whether

325—5

in the same or different townships, described in the petition, the county superintendent of schools of the county in which the territory or the greater part thereof is situated, shall order an election to be held for the purpose of voting for or against the proposition to establish a community high school, by posting notices for at least ten days in ten of the most public places throughout the said territory." (Laws of 1919, sec. 89*a*, p. 908.) The petition, in fact, contained more than fifty signatures and contained a correct description of the territory. At its filing the petition included as a part thereof two affidavits, and from the petition, including the statements and the affidavits, the county superintendent of schools found that the petition was signed by more than fifty legal voters residing in the territory described in the petition, that the territory was compact and contiguous and that the greater part of the territory was in Hancock county, and he entered such findings upon his official records. The requirements of the statute as to a petition were met, and the county superintendent of schools of Hancock county had jurisdiction to order the election.

It is next contended by appellants that proper notice of the election was not given. There is no question but that the requisite number of notices were posted and that the notices were sufficient as to form. The county superintendent of schools of Hancock county made and filed in his office his affidavit as to posting the notices in ten of the most public places throughout the territory, specifying the places. He also filed in his office his certificate of such posting and made an official record of his findings in the premises. The evidence shows a sufficient compliance with the statute as to notice.

A large amount of evidence was taken on the controverted question as to whether or not the territory comprising the district was compact and contiguous and as to whether or not Dallas City, where the high school was located, was a community center. The district as organized

contains about thirty-eight and a quarter sections of land, about six and a half of these sections being in Henderson county and the remainder in Hancock county. The district at its widest point east and west is eight and a half miles, at its widest point north and south is six miles, at its narrowest point north and south is approximately three and a half miles, and at another point north and south is four and a half miles. The district borders upon the Mississippi river and follows its contour along a portion of the western and northern boundaries of the district. The high school building which is now being used in the district is located in Dallas City, which lies about half-way between the east and west lines of the district and on the northern side of the district, next to the Mississippi river. Dallas City in 1920 had a population of 1140. Pontoosuc, which also lies within the district two miles west of Dallas, has a population of 199. Lomax, with 211 population, is east and somewhat north of the district and six or seven miles distant from Dallas. Colusa, with 202 population, is south of the district and four miles from Dallas. Niota, with 150 population, is west of the district and nine miles from Dallas. There are two railroads running through Dallas City, one passing through Lomax, Dallas and Colusa, over which there are two trains a day, the morning train leaving Lomax at 8:02 A. M. and arriving at Dallas at 8:15 A. M., the train going north leaving Colusa for Dallas at 9:24 A. M. and arriving in Dallas about 9:36 A. M., the evening train from the south arriving in Dallas at 5:54 P. M. and reaching Lomax at 6:06 P. M. The evening train going south is due in Dallas at 4:30 P. M. and arrives at Colusa about 4:43 P. M. There is a flag station about two and a half miles north of Dallas, a few rods from the business street, where the train stops if anyone desires to get off or on. The depot at Dallas is about two and half blocks from the high school building, with cement sidewalks from the depot to the building. On the other railroad there is a

passenger train going west from Dallas in the afternoon at 4:39 and arriving at Pontoosuc at 4:45 and at Niota at 4:53, and a passenger train in the morning from the west arriving at Dallas at 6:50 and leaving Pontoosuc at 6:45 and Niota at 6:35. There is a local freight train from the west arriving at Dallas at 7:45 and due in Pontoosuc at 7:40 and Niota at 7:30 in the morning, which carries passengers. The high school building in Dallas City is about seven blocks from the Santa Fe depot, and there is a brick and cement sidewalk from the depot to the school building. There has been a high school maintained in Dallas City for a number of years, and during this period of time the evidence shows that pupils have attended the high school from all over this territory and from practically every direction from Dallas City, and children who now live or formerly lived far outside of the district lines have attended the Dallas City high school and in many and most cases lived at home at the time they attended school.

There are several roads leading into Dallas City from various directions. As is usual in this class of cases there was much evidence introduced as to the character of these roads. While some of them are macadamized in places, they are for the most part ordinary dirt roads in ordinary state of repair, which in times of wet weather get so muddy that it is sometimes difficult to travel over them and at times automobiles get stuck and have to be hauled out. The evidence also shows that except at very infrequent intervals, and then only for a very short time, these roads are passable by team, and that at all seasons of the year they are in use by physicians, by rural mail carriers, by children attending district schools and by pupils who attend the Dallas high school, who testified as witnesses and whose evidence showed very little loss of time on account of the condition of the roads. The streams in the roads are bridged by substantial bridges, except on what is known as the County Line road, where there are two fords, one of which has

a cement bottom.  Upon a few occasions it has been impossible to cross these fords.  Evidence of students who traveled this road in going to the Dallas City high school is to the effect that they were able to cross this creek except a very few times, and that by going a mile further they were able to take another road and thus avoid the fords.

While it is not a lawful exercise of the constitutional power to create a school district which on account of its size or road conditions will not permit the children to attend school by traveling from their homes to a school in a reasonable length of time and with a reasonable degree of comfort, (*People* v. *Young,* 301 Ill. 67,) it is impossible to create a district of any size which will afford the same conveniences to all the children attending the school, and it cannot be said because a student may occasionally miss school on account of road conditions a school district does not, therefore, comply with the law.  (*People* v. *Rote,* 312 Ill. 99; *People* v. *Keys,* 313 id. 234.)  Every reasonable presumption will be indulged in favor of the validity of a school district established by authority of the legislative department of government, and the courts will not hold a district invalid for lack of compactness and contiguity unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school.  *People* v. *Standley,* 313 Ill. 46.

A community high school district comprises but one community for school purposes where the school is located in the largest town in the district which has always been regarded as a community center for school purposes, although the district is adjacent to other towns outside of the district and many inhabitants of the district use the latter towns for business, religious and social purposes. (*People* v. *Keys, supra.*)  The court, after seeing the witnesses and hearing their evidence upon the controverted questions of fact, found that Dallas City was the commu-

nity center of the district for school purposes and that the territory described in the petition was compact and contiguous, and these findings were warranted by the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

DUNN and THOMPSON, JJ., dissenting.