42  377
109  398

FRANCIS G. RUSSELL v. WILLIAM PHELPS AND WM. H. BRACE.

*Action against assignee in bankruptcy for willful neglect of duty to the injury of a particular creditor.*

An assignee in bankruptcy is liable in damages to creditors of the bankrupt, if he willfully omits or improperly performs official duties that are clearly prescribed and do not involve the exercise of discretion or judicial powers, and does so with intent to injure such creditors; and *it seems* that the State courts have jurisdiction of the action against him.

Notice of meetings of a bankrupt's creditors must be given by the assignee to all known creditors, and he has no discretion to exercise except as to the mode of giving it.

In an action against a bankrupt's assignee for willful injury to creditors from his omission or improper performance of his duties as to notifying them of meetings, or retaining sufficient funds to provide for their known but undetermined claims, the plaintiffs must prove the bankruptcy proceeding and the appointment and qualification of the assignee and his entry on the discharge of his duties, and show that plaintiffs were creditors and that defendant knew it and wilfully and with intent to injure them omitted or improperly performed the duties referred to as alleged.

The fact that any essential element of a case has been sufficiently proved does not make it erroneous to admit farther competent testimony tending in the same direction even though the tendency is slight; the weight and effect of the evidence are for the jury.

Unpleasant relations between a bankrupt's assignee and the attorney of a creditor may be shown in an action by the latter against the assignee for damages arising from his willful omission to notify the creditor of meetings in bankruptcy or to secure his claim as required by the Bankrupt Act.

Where a memorandum upon a deed was admissible in evidence, and referred to the land described in it, the deed was *held* admissible.

In an action against an assignee in bankruptcy for willful negligence, it is admissible to show the custom in respect to those proceedings wherein he was at fault, if it tends to show that a uniform practice existed in conformity with the legal construction of the Bankrupt Law.

In an action against a bankrupt's assignee for willful neglect to notify creditors of meetings in bankruptcy, it was shown that the second meeting of creditors had been adjourned. *Held* that

42 MICH.—48.

although the Bankrupt Law does not provide for such adjournment, it was not error to call the jury's attention to the want of any notice of the adjourned meeting in connection with the evidence as to whether notice was given of the regular meeting.

Portions of a charge will not be considered as if standing alone, but will be construed in connection with the rest and in the light of the pleadings and evidence.

The Bankrupt Law (Rev. Stat. U. S., § 5092) provides that at the second meeting of creditors, it shall be determined what part of the net proceeds of the estate shall be divided after reserving a sum to provide for all known undetermined claims. *Held* that the assignee cannot divide all the proceeds then in his hands, but only so much as remains after reserving the fund for undetermined claims.

In an action against an assignee in bankruptcy for willful neglect to give notice by mail of creditors' meetings, it is for the jury to determine whether notice had been mailed; if so, it is unimportant whether it was received.

Jurisdiction in a Federal court, so long as it is not exercised, does not necessarily deprive a State court of the right to proceed in the same matter.

Whether, at common law, an issue could be framed and trial had in the Federal courts in an action for damages against a bankrupt's assignee for willful neglect of duty to the injury of creditors—*Q.*

Where a declaration against an assignee in bankruptcy set forth facts constituting a breach of duty, and alleged that the plaintiffs as creditors of the bankrupt were thereby deprived of their claim against his estate, and that by means thereof the estate had been exhausted and the plaintiffs wholly deprived of their rights therein, the allegation of damage was held to be sufficiently specific to admit evidence showing whether the entire claim, and if not, what part of it, was lost because of the facts of which complaint was made.

Error to the Superior Court of Detroit. Submitted October 30, 1879. Decided January 7, 1880.

TRESPASS ON THE CASE. Defendant brings error.

*Ashley Pond* for plaintiff in error.

*Alfred Russell* for defendants in error.

MARSTON, C. J. This was an action of trespass on the case brought to recover damages for an alleged fail-

ure of duty as an assignee in certain bankruptcy proceedings. In the first count it was, amongst other things, alleged that although the defendant well knew plaintiffs were creditors of the bankrupts, holding the largest valid, subsisting and provable claim against the estate, yet he having assumed to call a second meeting of the creditors for the purpose of declaring a dividend, willfully and wrongfully intending to hurt and injure the plaintiffs and to deprive them of their just share of the estate, willfully refused and neglected to send them notice, by reason of which they were prevented from being present, and the power of determining what amount of the proceeds should be divided was shifted from the creditors to the assignee, by means whereof, etc.

In the second count, that well knowing plaintiffs' claim, and that it had not been proven at the time of calling the meeting aforesaid, he did not retain a sum sufficient to provide for all undetermined claims, but disregarding his duty and willfully and wrongfully intending to hurt and injure the plaintiffs, and to deprive them of their just claim against the estate, did make and declare out of the proceeds of said estate a dividend of about one hundred cents on the dollar, and pay the same to the creditors who had proved their claims at the time of calling the said meeting, and did not reserve a sum sufficient to pay plaintiffs' claim, as by law he was bound to do, by reason, etc.

If the person appointed, and who was acting as assignee of the bankrupt estate, with the intention of injuring the plaintiffs, who were creditors, willfully and wrongfully omitted the performance of, violated or improperly performed, any clearly prescribed official duty to the plaintiffs, which was not discretionary, or did not involve the exercise of judicial powers, he would be liable to them for the damages sustained in consequence thereof. Cooley on Torts, 377–9.

The alleged duty violated was, *first*, in omitting to give plaintiffs notice of a second meeting of creditors

which had been called; and *secondly*, in improperly declaring and paying a certain dividend without retaining sufficient to provide for known undetermined claims. We will first inquire what his duty was in these respects.

The Act of Congress, in providing for a distribution of the bankrupt's estate, requires a *pro rata* division to be made among the creditors without priority or preference, except in certain matters not necessary to be here specified. Rev. Stat. U. S., § 5091. The court, upon request of the assignee, is required to call a general meeting of the creditors, *of which due notice shall be given.* At this meeting the assignee is to report and exhibit to the court and creditors just and true accounts of his receipts and payments, and a statement of the whole estate of the bankrupt as then ascertained; of the property recovered and the property outstanding; what debts and claims are yet undetermined, and what sum remains in his hands. The majority in value of the creditors then present are given power to determine whether any and what part of the net proceeds of the estate, after deducting and retaining a sum sufficient to provide for all undetermined claims, which have not been proved, shall be divided among the creditors. If at least one-half in value of the creditors do not attend the meeting, either in person or by attorney, it then becomes the duty of the assignee to so determine what part shall be divided. § 5092. "The assignee shall give *such notice to all known creditors*, by mail or otherwise, of all meetings, after the first." § 5094. The meeting in these sections provided for, is not a first meeting.

The clear language of these provisions would seem to leave no room for doubt or construction as to the question of notice. If a meeting was called it was the duty of the assignee to give notice thereof to all known creditors, and upon this subject he had no judgment or discretion to exercise, except in the method of giving it. The creditors, where known, were entitled to this notice, in order that they might be present, if they so desired,

to ascertain the condition of the estate, and determine, subject to the rights of the creditors holding the undetermined claims, what part of the net proceeds should be divided. This was a valuable and important right of which the creditors—more especially those holding one-half in value of the debts,—could not rightfully be deprived without their consent.

It is equally clear that if one-half in value of the creditors did not attend a meeting properly called, and of which due notice was given, it then devolved upon and became the duty of the assignee to determine what otherwise was the duty of the creditors to do, viz., what part of the net proceeds should be divided, deducting and retaining a sum sufficient to provide for the undetermined claims. We will have occasion to refer to this matter again when we come to consider the charge.

Thus far the duty of the defendant was clear and imperative. In view thereof, and of the allegations of the declaration, it was incumbent on the plaintiffs to prove the bankruptcy proceedings, and that the defendant was appointed assignee; that he qualified and entered upon the discharge of the duties of his office; that plaintiffs were creditors as alleged, and that the assignee had knowledge thereof; that a second meeting of the creditors was called, and that the assignee did not give them notice thereof; that at such meeting a majority in value of the creditors were not present; that the assignee did thereupon determine the amount of the proceeds which should be divided, and did not retain sufficient to provide for the known undetermined claims, and the damage which they suffered thereby; and that the assignee, in not giving the notice, and in not retaining sufficient to meet their claims, acted willfully and wrongfully, with intention to injure them. Evidence having a tendency, however slight, to establish one or more of the above essential facts, would be admissible. And the fact that any one of the propositions necessary to be established had already been sufficiently proven by other testimony, or

even admitted, would not render erroneous the admission of farther competent testimony tending in the same direction. In view thereof and of what has already been said as to the duty of the assignee, and the facts necessary for plaintiffs to establish in order to recover, we think the exceptions taken to the admissibility of certain evidence may very easily be disposed of. We do not deem it necessary to consider each exception separately. A careful examination of the exceptions and evidence satisfies us that it was admissible. Some of it was strongly criticised, as having no proper tendency to sustain certain propositions. After giving due and proper consideration to all that was urged against it, yet we are of opinion that it did have a fair tendency to establish the issue; and although as to some portions the tendency was but slight, yet still that did not render it inadmissible, the weight and effect to be given it being proper questions for the jury. Indeed, in the trial of such a case it is very difficult to exclude any part of the whole history of the proceedings in the bankrupt matter, and of the relations existing between the parties, so far as known to the defendant.

The state of feelings existing between the defendant and the attorneys of the plaintiffs was competent. It may be true that "men do not usually injure one man to spite another," and that the motive of defendant would not furnish a ground of liability. The motive which prompts the proper performance of official duty is not of the slightest legal importance, while in the improper performance thereof it may be of the utmost importance. The facts and circumstances that might prove a sufficient motive to influence one man to disregard the proper performance of duty, or to commit a positive wrong, might with another, and indeed with a majority of men, have no sort of influence. What might or would not be considered sufficient cannot be determined as matter of law, but must be submitted to the jury, to be by them considered in the light of all the evidence in the case.

The deed, and memorandum thereon, referred to in the eleventh assignment of error,[1] does not appear in the record. It is apparent that the deed was offered because of the memorandum thereon, and in connection with the oral evidence relating thereto. In this view it was admissible.

We do not understand that the evidence as to custom given by Mr. Dickinson, as referred to in the twelfth and thirteenth assignments,[2] in any way tended to show

---

[1] 11. That said court erred in overruling the objection of plaintiff in error to the reception in evidence of a paper purporting to be a copy of a deed dated the 7th day of January, 1876, from George N. Dean to Mason Dean, and a memorandum in the handwriting of plaintiff in error, containing a statement of facts in regard to the transactions of Dean & Young with reference to their property, and the conveyance by Dean of the land described in said deed; and in permitting said paper and memorandum to be received in evidence.

The foregoing assignment was based on the following testimony of Don M. Dickinson, of the firm of Griffin & Dickinson, attorneys for defendants in error in the bankruptcy proceedings, and on the admission of documents in connection therewith:

Q. State whether you received instructions in writing from F. G. Russell, and also a copy of the deed, with reference to carrying on a suit to collect in the assets of Young & Dean,—instructions in writing, and in the personal handwriting of F. G. Russell?

A. I received a memorandum of facts for examination, added to my own memorandum, for the examination of the bankrupts; also a memorandum upon which to bring suit.

Q. In other words he gave you such memoranda as would enable you to carry on the suit?

A. Yes, sir.

Counsel for plaintiffs here exhibited to the witness a paper purporting to be a copy of a deed dated the 7th day of January, 1876, from George N. Dean to Mason Dean, and a memorandum in the handwriting of the defendant, containing a statement of facts in regard to the transactions of Dean and Young & Dean with reference to their property, and the conveyance by Dean of the land described in the deed mentioned; and the witness identified them as the memoranda referred to in the last above question and answer; and the same were thereupon offered in evidence by the plaintiffs. Defendant objected to their admission as irrelevant. The objection was overruled, and defendant excepted.

[2] 12. That said court erred in overruling the objection of plaintiff in error to the question put to the witness Don M. Dickinson, to wit: "State what the custom was and has been since the Bankrupt Law of 1867,—the custom and practice before the Register in reference to proving the claims of creditors at the first meeting, or at any period before the second meeting,"—and in permitting said witness to answer said question.

13. That said court erred in overruling the objection of plaintiff in error to the question put to the witness Don M. Dickinson, to wit: "What has been the practice from 1867 down to the repeal of the Bankrupt Law as to giving notice to creditors other than those who had proved their claims, of the calling of the second meeting?" —and in permitting said witness to answer said question.

that a custom had grown up other or different than what the statute required in reference to the proof of claims or the giving of notice. Such evidence could not be admitted to create a liability for a failure to comply therewith, contrary to the statute, or perhaps in the absence of statutory requirements. But for the purpose of showing a uniform construction and practice, in accordance with the legal construction, with other facts from which the jury might infer the knowledge of such custom on the part of the defendant, we think such evidence would be admissible as an aid to the jury in finding a willful violation by the defendant. A man may, through ignorance in fact, in good faith omit the performance of even a clear statutory duty, but he would not be quite so likely to where a knowledge of the statute and a uniform custom in conformity therewith, was brought to his attention.

In reference to what the court said about an adjournment of the creditors' meeting and the fact that notice thereof was not brought to plaintiffs' knowledge.[1] No ad-

[1] The judge charged as follows: "And in this connection I charge as requested by the defendant 'that if defendant mailed, or caused to be mailed notice of the meeting of creditors of Young & Dean, called to be held on the 15th of May, 1877, to plaintiffs, it is of no consequence whether or not plaintiffs received it; and the verdict must be for defendant.' But you are to remember, gentlemen, in this connection, that the plaintiffs were not present at the meeting on the 15th of May, and the meeting was adjourned; and there is no evidence here tending to show that the plaintiffs had any notice or any knowledge of the adjourned meeting, or were notified to be present upon that occasion. I charge you, too, as requested by the defendant, 'that the defendant was not required to see that the creditors received notice of the second or any other meeting, but only to cause notice of such meeting to be published and enclosed in an envelope addressed to the creditor, deposited in the post-office with postage prepaid, in accordance with the order of the Register.' In connection with that, I further charge you, gentlemen of the jury, that the meeting being adjourned from the 15th to the 23d, and no notice of that adjournment being brought to the knowledge of the plaintiffs in this case, that you are to consider that, as a fact in connection with the others, as bearing upon the question of whether any notice was ever given to the plaintiffs of this second meeting of creditors to be held on the 15th, and which was adjourned to the 23d.

I also charge you that I find no warrant in the law whatever for the adjournment of the second meeting from the 15th to the 23d, for the law contemplates that where a sufficient number of creditors are not present, the assignee shall proceed to act upon the subject matter of the meeting with regard to the dividend, with regard to

journment is in terms authorized by the Bankrupt Act. Usually a power to adjourn for a limited period is expressly given, and must be strictly pursued. A continuance from day to day may in many cases be a matter of necessity, and therefore within the implied powers, in order to carry out those expressly given. The same necessity does not exist for an adjournment like that in the present case. If the power to adjourn, as was done, exists, then it is limited only by the discretion of the officer, and this in many cases might be considered a somewhat dangerous power. The section referred to[1] evidently contemplates action by the assignee instead of an adjournment. If instead of acting, the officer does adjourn to give the creditors an opportunity to act, then it would seem highly proper that some notice of such adjournment should be given those not present, in order that they might avail themselves of the opportunity thus sought to be afforded them. In the limited and guarded way in which the court per-

reserving funds for the payment of undetermined claims, and, in fact, act as if the meeting was held by a sufficient number of creditors under the law, he to act in their place."

[1] Section 27 of the Bankrupt Law (U. S. Rev. Stat., § 5092) provides as follows:

At the expiration of three months from the date of the adjudication of bankruptcy in any case, or as much earlier as the court may direct, the court, upon request of the assignee, shall call a general meeting of the creditors, of which due notice shall be given, and the assignee shall then report, and exhibit to the court and to the creditors just and true accounts of all his receipts and payments, verified by his oath, and he shall also produce and file vouchers for all payments for which vouchers are required by any rule of the court; he shall also submit the schedule of the bankrupt's creditors and property as amended, duly verified by the bankrupt, and a statement of the whole estate of the bankrupt as then ascertained, of the property recovered and of the property outstanding, specifying the cause of its being outstanding, and showing what debts or claims are yet undetermined, and what sum remains in his hands. The majority in value of the creditors present shall determine whether any and what part of the net proceeds of the estate, after deducting and retaining a sum sufficient to provide for all undetermined claims which, by reason of the distant residence of the creditor, or for other sufficient reason, have not been proved, and for other expenses and contingencies, shall be divided among the creditors; but unless at least one-half in value of the creditors attend the meeting, either in person or by attorney, it shall be the duty of the assignee so to determine.

mitted the jury to consider such want of notice, we think there was no error. *Stadler v. Moors*, 9 Mich., 264.

The instruction given as contained in the 27th assignment of error [1] is complained of.

We have repeatedly said that we cannot consider portions of the charge standing alone. We must look at all that was said, and ascertain therefrom, in view of the pleadings and evidence, whether taken as a whole, erroneous instructions likely to mislead the jury, were given.

Certainly the court could not have intended, nor could the jury have understood, that defendant's unaccomplished designs would render him liable. The court had previously instructed them that the omission to notify the plaintiffs of the meeting and to reserve sufficient of the assets to provide for their claim, if done wrongfully and willfully intending to injure and hurt the plaintiffs, would render him liable. We do not understand that any other claim than the two here mentioned was made as a basis for a liability, so that the general language of the court must have been understood throughout as applying to the omissions mentioned. There was nothing else in the case to which they could be applied.

Under the 28th assignment it was urged that the court erred in instructing the jury as follows: "I shall hold for the purpose of this case, that the sum to be retained must be out of the fund actually on hand, or proceeds actually then held."

It was insisted that if the assignee has property on hand which in good faith he believes sufficient to meet undetermined claims, that he may divide all the money actually in his hands at the time of making any dividend.

---

[1] 27. That said court erred in instructing the jury as follows: "If the jury believe the defendant had feelings of malice towards the plaintiffs or their attorney, in the bankruptcy case of Young & Dean, and on that account willfully designed to so frame and conduct his official proceedings as assignee as to purposely prevent plaintiffs from realizing any dividend at all out of the estate of Young & Dean, the jury should render a verdict for the plaintiff; provided that they conclude that he did not reserve a sufficient sum from the funds then on hand for the payment of undetermined claims at the time of this second meeting."

Such is not in our opinion the correct view. At the meeting referred to, the assignee is required to exhibit to the court and creditors an account of his receipts and payments, a statement of the whole estate then ascertained, of the property recovered and of the property outstanding, specifying the cause of its being outstanding, and showing what debts or claims are yet undetermined, and what sum remains in his hands. It is then to be determined what part of the net proceeds of the estate, after deducting and retaining a sum sufficient to provide for all undetermined claims, shall be divided. It is that part of the net proceeds remaining in his hands, after *deducting* and *retaining* sufficient thereof to meet the undetermined claims, that is to be divided. Any other construction would place the undetermined claims subject to so many uncertainties, which we cannot believe Congress ever so intended from the language used. Rev. Stat. § 5092.

It was a question of fact for the jury whether notice of the meeting had been mailed to the plaintiffs. If it was, whether they received it or not would be unimportant.

It is farther urged that the court below had no jurisdiction in the premises.

No question of jurisdiction is raised by the pleadings in this case. That the Superior Court has general jurisdiction, except as to the residence of the parties, in actions like the present, for a wrong done or breach of duty, is not questioned. It is not claimed nor does it appear, that the United States court in the bankruptcy proceedings has taken any action whatever in this matter, or that it has ever been requested to or its attention called thereto. It is also worthy of notice that the proceedings or result in the present case in no way interferes with the property of the bankrupts, or causes or can cause any delay or embarrassment in the progress or settlement of the bankruptcy matters, or injuriously affects the other creditors of the bankrupts.

The subject matter of this complaint would not ordi-

narily arise in the proper progress of the proceedings in the bankrupt court, and the fact that it might be there raised and disposed of upon a special showing—a matter upon which we express no opinion—would not, we think, oust the Superior Court of its jurisdiction, when once acquired, to proceed to hear and determine the matter. The existence of jurisdiction in the United States court, while unexercised, would not necessarily deprive the Superior Court of its right to proceed. *Ives v. Tregent,* 29 Mich., 390.

It may to say the least admit of very grave doubt whether, admitting that the question here put in issue could be disposed of in the United States court as claimed under Sec. 5091, there is any provision or way in which an issue could be formed and a trial had in accordance with the course of the common law.

Whether any wrong was done the plaintiffs by which they were deprived of a right, and in consequence suffered damages, and the extent thereof, ordinarily would be matters which they would have a right to have put in issue and submitted to a jury. This they clearly could obtain in the Superior Court, and to deprive them thereof and compel them to proceed in some other court where such right might be denied them, should only be done in the clearest cases.

Objection was made to the sufficiency of the declaration to enable plaintiffs to recover, if at all, beyond nominal damages.

The facts constituting the breach of duty are sufficiently set forth, by means whereof it is in the first count alleged the plaintiffs *were deprived of their claim against said estate,* to their damage, etc.; and in the second count, that by means thereof the estate had been *exhausted,* and the plaintiffs *wholly deprived of their rights therein.* Now, while it may be that a loss of the entire claim would not ordinarily be inferred as a necessary result of the acts complained of, yet it is evident that more than mere nominal damages may have been sustained as a

natural though not a necessary consequence, hence requiring a special allegation of damages. In this case the loss of the plaintiffs' claim is alleged as the damage sustained, and this was a sufficiently specific allegation to permit evidence to be given showing whether the entire claim, and if not, what part, was lost on account of the acts complained of. *Gilbert v. Kennedy*, 22 Mich., 117; *Allison v. Chandler*, 11 Mich., 542; *Burrell v. N. Y. etc. Salt Co.*, 14 Mich., 38.

We find no legal error in the record, and the judgment must therefore be affirmed with costs.

The other Justices concurred.