343 Ill. App. 362 (1951)
99 N.E.2d 385
People of State of Illinois ex rel. William Smail et al., Plaintiffs-Appellants,
v.
Board of Education of Community Unit School District Number 202 of Fayette County, Illinois et al., Defendants-Appellees.
Term No. 51F7.
Illinois Appellate Court.
Opinion filed May 23, 1951.
Released for publication June 22, 1951.
*363 *364 J. RICHARD ROYAL, State's Attorney, Fayette county, of Vandalia, and VANDEVER & BULLINGTON, of Hillsboro, for appellants.
WILL P. WELKER, of Vandalia, for appellees.
MR. JUSTICE BARDENS delivered the opinion of the court.
This is an action brought in the name of the People of the State of Illinois by the state's attorney of Fayette county, Illinois, on relation of William Smail and others, who are citizens, residents, electors, and tax payers of Community Unit School District Number 201 of Fayette county, Illinois, against Community Unit School District Number 202 of Fayette county, Illinois, and its board of education. The action is quo warranto and requires the defendant to show by what warrant, right, and authority they purport to exercise jurisdiction over the following described lands, to wit:
All W 1/2 Sec. 5; all E 1/2 Sec. 6; all NW 1/2 Sec. 6; E 1/2 SW 1/4 Sec. 6; NE 1/4 NW 1/4 Sec. 7; N 1/2 NE 1/4 Sec. 7; N 1/2 NW 1/4 Sec. 8; the SE 1/4 NW 1/4 Sec. 8; all SW 1/4 Sec. 8; the NE 1/4 SE 1/4 Sec. 7; S 1/2 SE 1/4 Sec. 7; SE SW Sec. 7; NE 1/2 NE 1/4 Sec. 18; NE 1/4 NW 1/4 Sec. 18; N 1/2 NW 1/4 Sec. 17; SE 1/4 NW 1/4 Sec. 17; E 1/2 SW 1/4 Sec. 17; all W 1/2 Sec. 20; all Sec. 19; all N 1/2 Sec. 30; all SE 1/4 Sec. 30; E 1/2 SW 1/4 Sec. 30; all W 1/2 Sec. 29; all E 1/2 W 1/2 Sec. 31 lying N. of U.S. Route 40; all of the *365 E 1/2 Sec. 31 lying N. of U.S. Route 40; all W 1/2 NW 1/4 Sec. 32 lying N. of U.S. Route 40; all E 1/2 NW 1/4 Sec. 32; all in Twp. 7 N., R. 3 E., of the 3rd P.M., Fayette county, Illinois.
All Secs. 13, 24, 25 and 36 T. 8 N., R. 2 E., 3rd P.M., Fayette county, Ill.; and all that part Secs. 1, 11, 12, 14 and 15 T. 8 N., R. 2 E., 3rd P.M., Fayette county, Ill., East and South of Kaskaskia River.
Hereafter in this opinion, all of the described lands lying in Township 8 North will be designated as the "north tract" and that portion of the described lands in Township 7 North will be designated as the "south tract." Both tracts were organized as part of Community Unit District Number 201 and were later sought to be annexed to Community Unit District Number 202.
Community Unit District Number 201 was voted in as a unit district by the legal voters of such territory on November 6, 1948. Community Unit District Number 202 was voted in as a unit district on February 19, 1949, and its board of education was elected in March 12, 1949. These two tracts had a common boundary line running north and south of over sixteen miles, District Number 201 lying to the west, and District Number 202 to the east of the common boundary line.
The petition to detach the south tract from District 201 and annex it to District 202 was filed with the County Superintendent of Schools of Fayette county on June 29, 1949. A similar petition pertaining to the north tract was filed on June 30, 1949. Separate elections were called on each petition, both of which were held on July 23, 1949, and the votes in each case were cast in favor of the annexation of these tracts to District 202. All of the east and north boundaries of the south tract constituted a common boundary line with District 202. All of the east boundary line of the north tract, except the north one-half mile thereof, constituted a common boundary with District 202.
*366 After the defendants had filed their answer to the complaint in justification of their right to exercise the jurisdiction challenged, the plaintiff filed a reply. The case was submitted to the lower court on a stipulation of facts and the lower court made a finding and entered judgment in defendant's favor. From this judgment, plaintiff appeals to this court.
[1] The first contention of the plaintiff is that neither District 201 or District 202 had any legal existence prior to July 1, 1949. This is argued because the elections for the creation of these districts as Community Unit School Districts were held after the 1948-1949 school terms had begun. The argument of the plaintiff is based upon Section 8-13 of the Illinois School Code, Chapter 122, Illinois Revised Statutes, 1947 [Jones Ill. Stats. Ann. 123.857 (5)]. The last paragraph of this section reads as follows: "In the event the election effecting the organization of a Community Unit School District is held after school begins in any district involved in such consolidation, such consolidation shall not be effective until July 1 following the election." This contention involves a construction of the Community Unit District Sections of the School Code, added by the laws of 1947, being Sections 8-9 to 8-14 [Jones Ill. Stats. Ann. 123.857(1)-123.857(6)], inclusive. In construing legislation, the primary object to be ascertained is, of course, the legislative intent; and this must be gathered from the entire Act rather than from one clause, sentence, or section thereof. Illinois Bell Telephone Co. v. Ames, 364 Ill. 362. People v. Louisville & N.R.R. Co., 396 Ill. 502, 520.
In looking at other sections of the Act, we find in Section 8-9 that provision is made that upon receipt of a petition signed by the requisite number of voters, it is provided that the County Superintendent of Schools "shall order an election to be held for the purpose of voting for or against the proposition of establishing *367 a community unit school district." Again, in Section 8-12, the Act provides that if a majority of votes cast in the election is in favor of the establishment of a community unit school district, "the County Superintendent of Schools shall forthwith order an election to be held within thirty days for the purpose of selecting a board of education for such district." Further on in said Section, it is provided, among other things, that within ten days after their election, the members of the board of education shall meet and organize by electing one of their number president and one secretary. In Section 8-13, it is provided that "within thirty days after a community unit school district has been established, the County Superintendent of Schools under whose direction the district was established shall make and file with the County Clerk of the county or counties a map showing the territory of such community unit school district."
[2] It may thus be seen that the language of the Act assumes that the district becomes a legal entity upon the vote of the inhabitants of such district in favor of the establishments of such district. Plaintiff relies on a clause which states that the consolidation shall not be effective until July 1 following the election. This clause was inserted to minimize the confusion and waste of time that might be caused by a new management taking over control in the middle of a school year and to prevent attendant difficulties that might ensue, such as the transfer of pupils and teachers and the feasibility of terminating current contracts. In People v. Deatherage, 401 Ill. 25, at page 37, it was said: "The lawful organization of a community unit school district is not dependent upon the lawful election of board members, for no election of the board can be held until there is a district in being."
[3] It seems evident that the legislation regards the district as in existence and a legal entity even before it is permitted to commence the actual operation *368 of the school system and the consolidation of the various component districts or parts thereof. As a practical matter, the legislature undoubtedly deemed it preferable, if changes in boundary were to be made, that they be fixed and determined before actual operations by the new unit district began.
The second contention of the plaintiff also involves a construction of the statute, and particularly Section 8-14 of the School Code as it existed prior to 1949. This Section pertains to annexation of contiguous territory. The first three paragraphs of this Section provide for an annexation of "any territory contiguous and adjacent to said community unit school district" by a petition signed by at least fifty legal voters or twenty per cent of the legal voters who reside in the territory proposed to be annexed and in the territory comprising the community unit district if a resulting election is favorable for the annexation. The last paragraph of this Section provides that the boundaries of a community unit school district may be changed by the County Superintendent of Schools "by annexing territory to or detaching territory from" a community unit school district by following the procedure set forth in Sections 8-6, 8-7, and 8-8 of the School Code. Section 8-6 of the School Code, in Sub-Section 3 thereof, provides for the detaching of territory from any community unit district and annexing it to an adjacent community unit district. It provides that this may be done upon a petition signed by two-thirds of the voters residing in the territory described in the petition.
Brietfly stated, it is plaintiff's contention that under the first three paragraphs of Section 8-14 any territory, except territory which is a part of an existing community unit district, may be annexed to a community unit district by petition and majority vote; however, to detach territory of one community unit *369 district and annex it to another community unit district, the provisions of Sub-Paragraph 3 of Section 8-6 must be followed. Since Sub-Paragraph 3 of Section 8-6 was not followed in this case, plaintiff contends the annexation is illegal. The basis of the plaintiff's contention is that the last paragraph of Sub-Section 8-14 provides the only method that mentions a "detachment" of a territory from a community unit district. Therefore, to give meaning to every word used in this statute, the first three paragraphs of Section 8-14 must be construed to applying only to territory that is not a part of a community unit district.
[4] We agree with the plaintiff that each word in a statute must, if possible, be given some meaning. However, it must be kept in mind that the primary object is to ascertain the legislative intent.
The first paragraph of Section 8-14 uses the words "any territory." Thus there are no restrictions in that particular wording. The second paragraph of Section 8-14, in prescribing the form of ballot, uses the following form:
"Shall the boundaries of community unit school district No. ___ of ____ County, Illinois, be changed by detaching the following described territory:____ (Here describe territory) ____ from ____ school district No. ___, ____ County, Illinois, and adding such territory to said community unit school district No. ___ of ____ County, Illinois?"
Thus, when plaintiff argues that no detachment was referred to under the first three paragraphs, this provision has been overlooked. Furthermore, Section 8-6 explicitly allows use of the provisions of Section 4-30 for changing boundaries. The last mentioned section, in Sub-Paragraph 3 thereof, contains similar provisions to the first three paragraphs of Section 8-14.
*370 [5] In looking through the School Act, we find many provisions for annexation and detachment of school territory. As was said in the People v. Deatherage. 401 Ill. 25, at page 41, "The legislature has always, as a matter of policy, left to the resident voters the settlement of all questions involving school district territory." It appears to us that the last paragraph of Section 8-14 is designed to provide an alternate method of detaching and annexing territory whenever such alternate method is or seems feasible. If the territory sought to be annexed is large and contains a great number of voters, it would seem highly impractical or perhaps impossible to obtain a petition signed by two-thirds of the legal voters. In such a case, the proposal for annexation is required only to be signed by at least fifty voters or twenty per cent of the legal voters. At an election called for that purpose, it requires only a majority vote. On the other hand, if a territory sought to be annexed were quite small, where there were only one or two legal voters living in the area, it would seem highly desirable to eliminate the necessity of the expense of an election. The desires of the resident voters of the territory involved could quite easily be expressed by a petition signed by two-thirds of them.
[6] The third contention of plaintiff is that the north and south tracts sought to be annexed were not, either as a whole or separately, contiguous and adjacent to Unit District No. 202. We have previously called attention to the common boundary lines involved between the tracts and Community Unit District No. 202. Plaintiff, however, relies upon People v. Young, 301 Ill. 67, in which the court construed the word "contiguous" to mean "contiguous and compact" and contends that the defendants have not shown or attempted to show that the two tracts, either together or separately, were "compact" territory. Section 8-14 of the *371 School Code, under which the annexations were attempted, does not use the word "compact" but uses the words "contiguous and adjacent." We have searched the authorities and have found no case in Illinois in which the courts have held that a territory sought to be annexed to a district must of and in itself be a compact territory. In People v. Young, supra, the court was not passing upon an annexed territory, but was passing upon a validating act seeking to validate a whole district. Futhermore, the holding in People v. Young to the effect that the word "contiguous," in construing a curative act, meant "contiguous and compact" was criticized in People v. Baird, 307 Ill. 503, at pages 509 and 510, and again at page 521 the court used the following language:
"Counsel for the appellees have relied with much confidence on People v. Young, supra, and People v. Kirkham, 301 Ill. 45. We are of the opinion that the construction given to the curative act in those cases and the views expressed as to the effect of article 1 of section 8 of the constitution are not in accordance with the law."
We believe the legislature used the wording "contiguous and adjacent" advisedly. It would be wholly unwarranted to hold that a territory sought to be annexed to a particular district must in and of itself be a "compact" territory.
[7] The fourth and last contention of plaintiff is as follows: "To give effect to the alleged detachment and annexation would be to destroy the purpose of the constitutional provision requiring an efficient system of free schools." In answer to this contention, we can best cite the language of the court in People v. Deatherage, on page 31, as follows:
"This court has also been consistent in holding that the question of the efficiency and thoroughness of the school system established by legislative permission is *372 one solely for the legislature to answer and that the courts lack power to intrude."
For the reasons indicated, we are of the opinion that the judgment of the lower court was correct and should be affirmed.
Judgment affirmed.
SCHEINEMAN, P.J. and CULBERTSON, J., concur.