William HIGGINS and Milton K. Higgins,
Plaintiffs and Appellants,

v.

Jeff HAWKS et al., Defendants and
Respondents.

No. 8104.

Supreme Court of North Dakota.

Jan. 10, 1964.

Rehearing Denied March 12, 1964.

See also N.D., 122 N.W.2d 129.

Higgins & Christensen, Bismarck, for plaintiffs and appellants.

William R. Mills, Rausch & Chapman, Alfred A. Thompson and Harold L. Anderson, Bismarck, for defendants and respondents.

TEIGEN, Judge.

This action was commenced in Morton County to quiet title to land. The Morton County District Court dismissed the action on motion made by several of the defendants, including Burleigh County, on the

ground that it lacked jurisdiction of the subject matter. The land is described in the complaint as "an island lying in the Missouri River with its southwesterly or down stream end situated in the NW¼ NW¼ of Section 19 and its northerly end situated in the NW¼ of Section 8 and situated in Sections 7, 8, 17, 18 and 19, in Township 138, of Range 80, Morton County North Dakota as projected from the latest government survey on the west side of the Missouri River, * * *."

The defendants moved for a dismissal on the ground that the land is situated in Burleigh County and the Morton County District Court does not have jurisdiction. Some of the defendants also pleaded estoppel, and possession under color of title and payment of taxes for over ten years to Burleigh County as reasons why the court does not have jurisdiction.

The statutes provide that the boundary common to the counties of Burleigh and Morton is "the main channel of the Missouri River." Sections 11–01–09 and 11–01–31, N.D.C.C.

At the hearing on the motions the defendants submitted proof that the main channel of the Missouri River is now situated to the west, or Morton County, side of the lands described in the complaint and this fact is admitted by the plaintiffs. The defendants also introduced a map in evidence of the governmental survey made in 1872 of Township 138, North of Range 80, which shows the Missouri River situated west of the geographic area described in the complaint. It places the geographic area in question in Burleigh County in 1872. The plaintiffs also admit this as a fact.

The plaintiffs contend that after the date of the survey (1872), and over a course of years, the river slowly and gradually shifted its main channel toward the east, or the Burleigh County, side, in this area. It eroded the Burleigh County lands along the east shore of the river and accreted alluvion to the west bank, or Morton County side, of the river until all of the original land in the geographic area in question in this action was completely eroded away and replaced by several hundred acres of land, which accreted to the Morton County side or west bank of the river. (The plaintiffs are owners of land with riparian rights on the Morton County side.) Plaintiffs contend that by this process the boundary between the counties slowly changed and the geographic area in question became a part of Morton County. The area in question was in the form of a blunt peninsula located on the inside of a symmetrical curve or bend in the river. The plaintiffs argue that thereafter, by the process of avulsion, the river suddenly changed its course and cut a new channel across the peninsula in the approximate location of the original channel as located at the time of the 1872 survey. This latter action by the river, they say, did not operate to carry with it the boundary. They argue that although the channel of the Missouri River is now located west of the subject lands, it no longer constitutes the boundary between the counties and that the county boundary in this area remains along the thread of the main channel of the river as it existed before it changed its course by avulsion. This claimed boundary line is east of the lands in question and, if this claim is established, the Morton County District Court has jurisdiction of the subject land.

The defendants admit that changes in the course of the main channel of the river took place but they deny that the shift of the river's channel toward the east was by accretion and erosion. They allege that this change was also by the process of avulsion. It is their contention that the river formed itself a new arm, dividing itself and surrounding the land forming an island. Part of this land, they say, never eroded away and was never covered with water, except in flood time. This contention has support in the affidavits of two "old timers" attached to one of the motions to dismiss. One states he is 84 years of age and has lived in the area for 60 years,

the other states he has been familiar with the area for 62 years. Both state a portion of the area in dispute always remained as land, trees grew thereon and a portion of the land was cut off from the Burleigh County mainland by the river.

The defendants further argue that the river continued flowing on both sides of the island which was formed from Burleigh County lands for many years; that the new channel east of the island gradually widened and deepened and became the main channel of the Missouri River; that it remained the main channel for several years and that the old channel dried up, except in flood time. Alluvion accreted to the west shore of the island and to the east bank of the old channel. It gradually became land. Then, suddenly, by the process of avulsion as described by plaintiffs, the main channel shifted back to the west side of the island and the east channel dried up. These two changes of the channel of the river, both by avulsion, did not operate to change the boundary between the counties at any time.

The action was commenced in June 1959. The motions to dismiss were promptly made. Following the hearing thereon the court issued its memorandum opinion in September 1960. A formal order of dismissal was entered on September 20, 1960, and notice of entry thereof served upon the plaintiffs on September 23, 1960. On November 4, 1960, the plaintiffs served a notice of motion and motion for new trial or rehearing, to amend the summons and complaint and to add additional defendants. This motion was resisted and, after hearing, the court on May 10, 1961, entered its order denying the motion. This order was served on plaintiffs on May 19, 1961. Thereafter, on July 18, 1961, the plaintiffs served a notice of appeal to the Supreme Court from the order denying the motion for new trial or rehearing.

On March 19, 1962, findings of fact, conclusions of law, and order for judgment, and judgment dismissing the action, were filed. These papers were served on the plaintiffs the following day. An appeal was taken from the judgment to this court demanding trial de novo. The defendants then moved to dismiss this appeal for alleged jurisdictional defects on the ground that it was not timely taken. See Higgins v. Hawks (N.D.), 122 N.W.2d 129. The motion to dismiss the appeal was denied and a motion made by the plaintiffs to remand the record to the district court to take appropriate action to complete and correct the record was granted. Corrective steps were taken in the district court and the appeal was perfected. It is now before us on the merits. Both notices of appeal to this court are certified as a part of the settled statement of the case. Trial de novo is demanded.

An action for the determination of any right or interest in real property, or of an estate or interest therein, must be brought in the county in which the subject matter of the action, or some part thereof, is situated. Section 28-04-01, N.D.C.C.

█ If the land, the subject matter of this action, is situated in Morton County, the court in which the action was commenced has jurisdiction. If the land is situated in Burleigh County, it does not. Johnson v. Johnson (N.D.), 86 N.W.2d 647.

The only real dispute is whether or not the west bank of the river was gradually built eastward by accretion and the east bank eroded so that the main river channel was gradually shifted eastward, resulting in the shifting of the boundary line between the counties.

It is agreed the main channel of the river changed its course so its main channel in recent years became located a mile or more east of the 1872 channel location at its farthermost point.

It is also agreed that in the late 1930's the river re-established its channel in the approximate location of the 1872 channel

by avulsion and that the east channel dried up.

It is not disputed that from about 1920 until the late 1930's, the land between the two channel locations was dry except in flood time. Trees and sweet clover grew thereon and it was used for pasture and hay. Timber also grew and was cut for commercial purposes.

We have carefully reviewed the record and find it is absolutely devoid of evidence of what occurred between 1872 and about 1920, a period of about 48 years, except for the affidavits of the two "old timers."

If we consider a composite map prepared by the North Dakota State Water Conservation Commission attached to the plaintiffs' petition for a new trial or a rehearing, it still does not give us an answer to the question. This map shows that data obtained by the Missouri River Commission and platted on the map indicates the river had changed its course a considerable distance to the east, particularly in the area of Section 8, by the year 1891. However, a study of this map also discloses that in the Southwest Quarter (described as Lots 4 and 5) of Section 18, a large triangular shaped area is shown not to have been in any channel of the river platted on the map.

There is no evidence to show the method employed by the river in changing its course between 1872 and about 1920 and, furthermore, the composite map referred to above may be construed to indicate a portion of Section 18 has remained land throughout the years, which would support the defendants' theory.

 We cannot speculate on this question. The burden is upon the plaintiffs to prove by a fair preponderance of the evidence a change in the boundary occurred by the process of accretion. We find they have failed in this respect. Plaintiffs have not shown, nor do they claim in their petition for new trial or rehearing, that this missing evidence can be supplied.

Prima-facie evidence was presented by the defendants when it was shown the main channel of the river is located west of the land in question. The statutes, Sections 11-01-09 and 11-01-31, supra, establish that the boundary between the two counties lies along the main channel of the Missouri River. They place Morton County west of the main channel and Burleigh County to the east thereof. The plaintiffs have failed to introduce evidence to rebut the inference established by this evidence.

We find the trial court was correct in finding it had no jurisdiction over the subject matter for the reason that all of the land described in the complaint is located east of the main channel of the river as it is now located, which geographical area is made a part of Burleigh County by statute. We also find it was not error to dismiss plaintiffs' petition for new trial or a rehearing.

Because the foregoing disposes of the case, it is not necessary to this decision that we discuss the other reasons advanced to and considered by the court in dismissing the action.

The order dismissing the petition for new trial or rehearing and the judgment are both affirmed.

MORRIS, C. J., and STRUTZ, ERICKSTAD, and BURKE, JJ., concur.

On Petition for Rehearing.

TEIGEN, Judge.

The plaintiffs have petitioned for a rehearing in this case. The petition and supplementary petition show that they have misconstrued the opinion heretofore filed. The decision of this Court does not adjudicate that the land in question is located in either Burleigh County or Morton County.

The action was commenced in Morton County to quiet title to certain lands. The Court's jurisdiction over the land was chal-

lenged by a motion to dismiss the action. The defendants, as movants, introduced prima-facie evidence establishing an inference that the Court had no jurisdiction by showing that the main channel of the Missouri River is now located west of the land in question. Applying the statutes establishing county boundaries, this places the land in question in Burleigh County. This evidence shifted the burden of going forward with the evidence to the plaintiffs and we have found that the plaintiffs had failed to sustain the burden. It was for this reason that we sustained the dismissal ordered by the lower court. This does not amount to an adjudication of the case, nor does it establish the location of the land and it is without prejudice to the commencement of another suit.

We have again reviewed the evidence introduced by the plaintiffs and again find it does not sustain the burden to rebut the inference. We find the other matters set forth in the petition have no bearing on this decision. For these reasons the petition is denied.

MORRIS, C. J., and STRUTZ, ERICKSTAD and BURKE, JJ., concur.